IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROBERT P. GARVER,

    Plaintiff,

v.                                                     Case No. 20-2478-JWB

PRINCIPAL LIFE INSURANCE
COMPANY, et al.,

    Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendants' motions to dismiss. (Docs. 31, 32.) The motions have been briefed and are ripe for review. (Docs. 31, 32, 36, 38, 39.) For the reasons stated herein, Defendants' motions are GRANTED.

**I.**      **Background**

The following factual allegations are taken from Plaintiff's First Amended Complaint. (Doc. 27.) Plaintiff has a disability life insurance policy (policy number 7881457) with Defendant Principal Life Insurance ("PLI"), which he purchased through Defendants Duane Roth and Roth Companies, Inc. (collectively "Roth"). The policy contains several riders, including catastrophic disability damages, that if triggered provides for the payment of monthly benefits. On July 12, 2017, Plaintiff sustained debilitating injuries from a twenty-foot fall. He filed a disability claim (claim number 1020011) with PLI on August 1, 2017. PLI began paying benefits on the claim around October 2017. However, from the onset of receiving benefits, Plaintiff has disputed the amount of coverage and the benefits to which he is entitled.

**A.**      *Garver I*

1

On June 5, 2019, Plaintiff, for the first time, filed suit against PLI and Roth. That case, *Robert Garver v. Principal Life Ins. Co.*, No. 2:19-cv-02354-TC (D. Kan.) ("*Garver I*") is currently pending.[1]  *Garver I* concerns PLI's termination of total disability benefits that Plaintiff was receiving under the same disability insurance policy presently at issue before the court.  In *Garver I*, Plaintiff alleges three causes of action: (1) breach of contract against PLI, (2) fraudulent misrepresentations against PLI and Roth, and (3) negligence against Roth.  (*Id.*) (Doc. 107 at 3-4.)  First, Plaintiff alleges PLI breached the insurance contract by failing to pay benefits, namely "total disability benefits."  (*Id.*) (Doc. 107 at 3.)  Second, Plaintiff alleges Defendants misrepresented the payment of disability benefits under the insurance contract should he become disabled.  Third, Plaintiff alleges negligence against Roth in the purchase of and advice concerning disability insurance policies and claims.

The deadline for filing motions to amend in *Garver I* was November 29, 2019.  On July 31, 2020, Plaintiff served Defendants with supplemental disclosures addressing claims and damages for catastrophic disability.  (*Id.*) (Doc. 107 at 5.)  On September 4, 2020, Plaintiff filed a motion to amend the complaint seeking to add a breach of contract claim for catastrophic disability damages.  (*Id.*) (Doc. 89.)  In that motion to amend, Plaintiff argued:

> As plead in the First Amended Complaint, this case arises out of a disability insurance contract issued to Plaintiff by Defendant Principal Life Insurance Company. The entire contract consists of the Policy, the attached application and several Riders. At its core, the Policy provides for the payment of monthly benefits in the event Plaintiff becomes Totally Disabled. This entails an investigation into Plaintiff's ability to work in his "Occupation." The Policy Riders provide additional benefits. For example, the Residual Disability Benefits Rider provides benefits when the insured is working but unable to perform the duties of his Occupation. The Catastrophic Disability Rider provides additional monthly benefits in the event Plaintiff cannot perform two or more activities of daily living without assistance. The Cost of Living

---

[1] The court takes judicial notice of *Garver I*.  *See Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) (discussing the need for courts to "frequently take judicial notice of prior judicial acts found in records and files when evaluating the merits of a purported claim-preclusion defense.").

2

>Adjustment Rider (COLA) applies a factor increasing the amount of benefits payable for Total, Residual and Catastrophic Disability.

(*Id*.) (Doc. 89 at 3.) On October 26, 2020, the court denied Plaintiff's motion, explaining:

>Certainly, the discovery of a new cause of action during discovery unknown to the Plaintiff before the original amendment deadline constitutes good cause for amending the deadline and allowing the motion out of time. This is not, however, the case before the Court. Plaintiff and his counsel had Defendant Principal's claims file early, probably before the case was filed and certainly early in discovery. Plaintiff knew he had applied for Catastrophic Disability benefits and knew that the adjuster has informed him that medical records did not support that claim. He certainly knew he had not received those benefits. Plaintiff and his counsel had a copy of the Catastrophic Disability rider which describes the qualifications for that benefit. Certainly on the contract claim (Count I), Plaintiff and his counsel had enough information to bring a breach of contract claim if they felt he was entitled to but had not received the benefit. Plaintiff also wishes to add claims regarding this benefit to his negligence and fraud claims. The "newly discovered" evidence which Plaintiff claims justifies his late request for amendment on these claims is deposition testimony from the adjuster obtained on July 14, 2020, that because her review of the medical records caused her to decide the claim was not available, she conducted no further investigation concerning that claim. This fact was apparent from the information already available to Plaintiff based on his communications with the adjuster. This testimony added nothing material to the facts already known to Plaintiff and does not justify amending the Scheduling Order deadline to permit the late-filed Motion to Amend.

(*Garver I*) (Doc. 107 at 12-13)

### B.     *Garver II*

With his motion to amend still pending in *Garver I*, Plaintiff filed the present case ("*Garver II*") on September 28, 2020. (*Garver II*) (Doc. 1.)  In response to Defendants' motions to dismiss, Plaintiff filed his First Amended Complaint on December 4, 2020. (*Id*.) (Doc. 27.)  *Garver II* arises out of the same disability insurance policy and claim as *Garver I*.  Plaintiff alleges: (1) breach of contract against PLI, (2) fraudulent misrepresentations against PLI and Roth, and (3) negligence against Roth.  However, Plaintiff has now changed his breach of contract claim, and by extension his misrepresentation and negligence claims, to focus on the catastrophic damages

3

he was not allowed to assert in *Garver I*. On November 21, 2017, and August 30, 2018, PLI informed Plaintiff that the catastrophic disability rider was "not applicable" to his insurance claim. (*Id*.) (Doc. 27 at 4, 5.) On September 28, 2018, PLI terminated Plaintiff's disability claim and informed him once more of their position that his "benefits have been paid correctly and in full since the onset of [his] claim." (*Id*.) (Doc. 27 at 6.) Since the injury, Plaintiff has had ongoing medical issues and is still receiving medical care for those injuries—the most recent being a surgery on July 26, 2020. On August 4, October 5, and October 19, 2020, Plaintiff requested an investigation of his catastrophic disability claim, in light of new medical records and doctor statements following his recent surgery. PLI denied coverage—again—on October 30, 2020.

**II.     Standard**

The court will grant a 12(b)(6) motion to dismiss only when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the factual allegations need not be detailed, the claims must set forth entitlement to relief "through more than labels, conclusions and a formulaic recitation of the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008). The allegations must contain facts sufficient to state a claim that is plausible, rather than merely conceivable. *Id*. "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court construes any reasonable inferences from these facts in favor of the plaintiff. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

**III.    Discussion**

Defendants argue Plaintiff's First Amended Complaint in *Garver II* should be dismissed as improper claim-splitting. Defendants assert Plaintiff has brought this lawsuit to obtain the

4

amendment he was denied in *Garver I*.  Plaintiff argues that is not the case and instead *Garver II* raises new facts and contract language separate and distinct from those of *Garver I*.  The court rejects Plaintiff's counsel's gamesmanship.

"The rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit. By spreading claims around multiple lawsuits in other courts or before other judges, parties waste 'scarce judicial resources' and undermine 'the efficient and comprehensive disposition of cases.'"  *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011) (quoting *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 985 (10th Cir. 2002)).  Claim-splitting is a subdiscipline of claim preclusion that does not require a final judgment.  *Id*.  Instead, the question to answer is "whether the first suit, assuming it were final, would preclude the second suit."  *Id*. at 1218.  Under Kansas[2] law, there are four elements to claim preclusion: "'(a) the same claim; (b) the same parties; (c) claims that were or could have been raised; and (d) a final judgment on the merits.'" *Cain v. Jacox*, 302 Kan. 431, 434, 354 P.3d 1196, 1199 (2015) (quoting *In re Tax Appeal of Fleet*, 293 Kan. 768, 272 P.3d 583, Syl. ¶ 2 (2012)).

Here, it is undisputed that the parties are the same in *Garver I* and *Garver II*.  The parties' disagreement centers around whether this lawsuit involves the same claim.  To evaluate the same-claim inquiry the Kansas Supreme Court approves of the "transaction approach" employed by the Tenth Circuit.  *See Rhoten v. Dickson*, 290 Kan. 92, 106, 223 P.3d 786, 797 (2010); *City of Eudora v. Rural Water Dist. No. 4*, 875 F.3d 1030, 1035 (10th Cir. 2017) (stating the court has adopted the transactional approach).  "Under this approach, a cause of action includes all claims or legal theories of recovery that arise from the same transaction." *MACTEC, Inc. v. Gorelick*, 427 F.3d

---

[2] In a diversity case, the court applies the State law for claim preclusion in which the federal diversity court sits.  *See Hartsel*, 296 F.3d at 986 (noting "the best federal rule for the claim-preclusive effect of a federal diversity judgment is to adopt the law that would be applied by state courts in the State in which the federal diversity court sits.").

821, 832 (10th Cir. 2005). A "contract is generally considered to be a 'transaction' for claim preclusion purposes." *Id*.

In this case, Plaintiff alleges the same three claims based upon the same contract—the insurance disability policy—as *Garver I*. Plaintiff's counsel muddies the waters by arguing that PLI did not deny the catastrophic disability claim until October 30, 2020—the alleged "new" breach Plaintiff now "primarily seeks redress for." (*Garver II*) (Doc. 29 at 3-4.) This argument exemplifies the reasoning for the rule against claim-splitting. Indeed, a simple reading of the general allegations of the First Amended Complaint makes it clear Plaintiff has sought benefits from the catastrophic disability rider since his fall in 2017[3]—the same fall from which *Garver I* flows. If the court were to follow the logic advanced by Plaintiff's counsel, Plaintiff could file a new lawsuit every time PLI reaffirms its denial of his benefits.

Moreover, Plaintiff's counsel should have brought the catastrophic disability claim in *Garver I* and is now seeking to game the system. Plaintiff's counsel argues a separate and distinct breach occurred October 30, 2020 but he did not even allege PLI failed to perform an investigation after the July 26, 2020 surgery. Rather, it is clear that Plaintiff's counsel seeks to circumvent the *Garver I* court's ruling denying leave to add catastrophic disability damages. Inequity arises when parties seek to "use the tactic of filing two substantially identical complaints to expand the procedural rights [they] would have otherwise enjoyed." *Hartsel*, 296 F.3d at 990 (quotation marks omitted). Plaintiff's injury triggering possible catastrophic disability benefits flows from his fall in 2017, which is why he applied for those benefits initially. Plaintiff knew as early as 2017 that PLI refused to pay benefits under the catastrophic disability rider, but for good measure was told again on September 28, 2018. Plaintiff's counsel could have brought this claim with

---

[3] "By November 21, 2017, PRINCIPAL had not investigated GARVER's Catastrophic Disability claim and had informed GARVER that it was 'not applicable.'" (*Garver II*) (Doc. 27 at 4.)

*Garver I* in 2019.  Accordingly, Plaintiff's First Amended Complaint is dismissed for improper claim-splitting.

## IV. Conclusion

Based on the foregoing, Defendants' motions to dismiss are GRANTED.  (Docs. 31, 32.)

IT IS SO ORDERED this 8th day of June, 2021.

                                                                                  s/ John W. Broomes
                                                                                  JOHN W. BROOMES
                                                                                  UNITED STATES DISTRICT JUDGE